Marcos Magdeleano Rodriquez v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-288-CR

MARCOS MAGDELEANO RODRIGUEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

I.  Introduction

A jury found Appellant Marcos Magdeleano Rodriguez guilty of indecency with a child and assessed punishment at twelve years’ confinement.  
Appellate counsel has filed an 
Anders
 brief asserting that there are no grounds that could be argued successfully on appeal.  
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).
  We grant counsel’s motion to withdraw and affirm the trial court’s judgment.

II.  Background

On March 25, 2001, Rodriguez stopped by Heather Torrence’s home to  visit her and her two young sons.  Because Rodriguez was the brother of one of Torrence’s friends, he often babysat for Torrence’s boys while also keeping his sister’s children.  After visiting with Torrence for a period of time, Rodriguez went into the dining room to draw pictures with Torrence’s three-year-old son, C.B.  Shortly thereafter, when Torrence entered the dining room to check on Rodriguez and C.B., she observed C.B. standing on a chair with Rodriguez sitting in a chair directly next to the boy.  According to Torrence, Rodriguez had his hand “below the navel in the front” on C.B.’s body, and C.B.’s shorts appeared twisted as though they had “just been pulled right back up.”  Torrence immediately took C.B. to his room and questioned him about what had transpired in the dining room.  In response, C.B. told his mother that Rodriguez had touched his “peepee.”

Thereafter, during the course of a custodial interrogation, Rodriguez admitted in a recorded statement that he had touched C.B.’s penis with his hand for approximately five minutes during the March 25 incident.  
Rodriguez was subsequently charged with indecency with a child, a second degree felony. 
See
 
Tex. Penal Code Ann.
 § 21.11 (Vernon Supp. 2003).  
Rodriguez pleaded not guilty to the offense.  However, after hearing evidence and testimony from both sides, the jury found Rodriguez guilty and assessed his punishment at twelve years’ confinement.  Rodriguez appealed.

III.  The 
Anders 
Brief

Rodriguez’s court-appointed appellate counsel has filed a motion to withdraw.  In support of his motion, counsel has filed a detailed brief in which he avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders
 by presenting a professional evaluation of the record demonstrating why there are no arguable grounds for relief.  386 U.S. 738, 87 S. Ct. 1396; 
see Mays v. State
, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).
 
 Specifically, in his brief, counsel raises several potential arguments on appeal, but after thoroughly examining each one, he concludes that none of the arguments would be meritorious.  We provided Rodriguez with the opportunity to file a pro se brief, but he did not do so.

Once counsel fulfills the 
Anders 
requirements
, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); 
Mays
, 904 S.W.2d at 923.  We have conducted an independent review of the record and have determined just that.

IV.  Independent Review of the Record

A.  Pre-trial

In the instant case, the indictment tracks the statutory language of the offense for which Rodriguez was convicted.  
It alleges that the offense occurred before the presentment of the indictment. 
See 
Tex. Penal Code Ann.
 § 21.11(a).  
The indictment conferred jurisdiction on the trial court and provided Rodriguez with sufficient notice to prepare a defense.  
See
 Tex. Const. 
art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).

Prior to trial, Rodriguez filed a motion to suppress the oral statement given to police after he was taken into custody, complaining that his statement was not freely and voluntarily made.  After a hearing, the trial court denied Rodriguez’s motion, finding that the statement was voluntary, and therefore, admissible at trial.  This court reviews a trial court’s denial of a motion to suppress under a bifurcated standard of review, giving almost total deference to a trial court’s determination of historic facts and reviewing de novo the court’s application of the law to those facts.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

At the suppression hearing, Officer William Brett Hart, a Wichita Falls police officer, testified that Rodriguez was fully advised of his rights before giving his statement, and he agreed to waive them.  According to Officer Hart, Rodriguez was not threatened or coerced into giving the statement
.  Officer Hart also testified that during the questioning, Rodriguez was not promised anything in exchange for his statement, and he never requested an attorney or asked that questioning cease.  Officer Hart was the only witness who testified at the suppression hearing.  

Thereafter, Rodriguez argued that his statement was involuntary because he invoked his right to remain silent during the interrogation, he was promised a benefit in exchange for his confession, and he lacked a sufficient “mental functioning level.”  Specifically, Rodriguez maintained that he invoked his right to remain silent in the following exchange:

[OFFICER HART]:  You guess?  I know it happened.  C.B. knows it happened.  Heather saw what happened.  Now you tell me, did the bad person take over a little bit that . . that morning?  Or did the good person just say, well, I’m going to do it anyway. Which one is it?  You don’t know or you don’t want to answer?

RODRIGUEZ:  Don’t want to answer.

It is well-settled law that law enforcement is permitted to interrogate a suspect in custody until the suspect unambiguously invokes his right to remain silent. 
 Dowthitt v. State
, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). Moreover, law enforcement is not required to ask questions to clarify whether a suspect wishes to invoke his right to remain silent.
  
Id.  
In the instant case, Rodriguez’s statement was a direct response to Officer Hart’s previous question.  Consequently, Rodriguez did not unambiguously invoke his right to remain silent, and Officer Hart did not violate Rodriguez’s right by continuing to interrogate him.  

The record also reflects that Officer Hart 
never promised Rodriguez any benefit or leniency in order to induce him to confess.  
During the interrogation, Officer Hart was merely attempting to persuade Rodriguez to tell the truth about what had transpired between him and C.B.  
See Dykes v. State
, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983) (recognizing that confession is not rendered inadmissible by telling suspect that it would be best to tell the truth). 

Additionally, evidence of mental deficiency alone does not render a confession involuntary.  
See Penry v. State
, 903 S.W.2d 715, 744-46 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 977 (1995).  In the instant case, there is no evidence in the record demonstrating that Rodriguez’s mental impairment was so severe that he was incapable of understanding the meaning and effect of his confession.  
See
 
Casias v. State
, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970). 

Therefore, because the record supports the trial court’s finding that Rodriguez’s oral statement was freely and voluntarily made, the trial court did not abuse its discretion by denying Rodriguez’s motion to suppress.  
See
 
Tex. Code Crim. Proc. Ann.
 arts. 38.21-.22 (Vernon 1979 & Supp. 2004); 
Dewberry v. State
, 4 S.W.3d 735, 747-48 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  Further, with the exception of matters related to Rodriguez’s motion to suppress, Rodriguez’s pretrial motions were either granted, agreed to by the State, or agreed to by Rodriguez and the State at the pretrial hearing. 

During voir dire, the trial court permitted Rodriguez to ask proper questions of the panel.  
The trial court also granted all Rodriguez’s challenges for cause.  However, after the State exercised its peremptory strikes, Rodriguez raised a 
Batson
(footnote: 1) 
challenge, claiming that the State struck two Hispanic venire members, Mr. Jimenez and Mr. Hernandez, solely based on their race.  After hearing argument from both sides, the trial court denied Rodriguez’s 
Batson 
challenge as to both Mr. Jimenez and Mr. Hernandez
.

When reviewing a 
Batson
 challenge on appeal, we must determine whether the trial court’s decision was “clearly erroneous” by examining the evidence in the light most favorable to the trial court's ruling.  
Yarborough v. State
, 983 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.)
.
  A ruling is clearly erroneous when, after searching the record, we form a definite and firm conviction that a mistake has been committed.  
Hill v. State
, 827 S.W.2d 860, 865-66 (Tex. Crim. App.), 
cert. denied
, 506 U.S. 905 (1992).  The trial court’s determination as to whether a defendant carried his burden to prove purposeful discrimination is a finding of fact that must be accorded great deference on appeal.  
See Chambers v. State
, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994).  Therefore, we will not disturb the trial court’s decision on appeal absent some evidence in the record to rebut the State’s race-neutral explanations.  
Yarborough
, 983 S.W.2d at 354.

During the 
Batson
 hearing, the State advised the trial court that it struck Mr. Jimenez because “he was highly skeptical of police officers and he was chewing gum.”  Both of the State’s aforementioned reasons for striking Mr. Jimenez were facially valid and race-neutral.  
See Davis v. State
, 964 S.W.2d 352, 355 (Tex. App.—Fort Worth 1998, no pet.) (holding challenge based on venire member’s statement that prior incident with police left a bad taste in her mouth was race-neutral);
 Webb v. State
, 840 S.W.2d 543, 545-46 (Tex. App.—Dallas 1992, no pet.) (holding challenge based on venire member chewing gum during voir dire was race-neutral).  
Our review of the record reveals no evidence rebutting the State’s race-neutral explanation for striking Mr. Jimenez.  Therefore, the trial court’s denial of Rodriguez’s 
Batson 
challenge as to Mr. Jimenez was not clearly erroneous.  
See 
Pitte v. State
, 102 S.W.3d 786, 791 (Tex. App.—Texarkana 2003, no pet.)
 
(stating that “[w]hen the trial court is offered no evidence in rebuttal of the State’s race-neutral explanation, the reviewing court is not in a position to say that it feels a definite and firm conviction that the trial court made a mistake.”).

T
he State also explained that it peremptorily challenged Mr. Hernandez because one of the prosecutors saw him raise his hand in response to a question asking, “Is there anyone on the panel who has a friend or family member who was fondled or molested or who yourself was a victim of that?”  
A venire member’s history as a crime victim 
constitutes a race-neutral reason for exercising a peremptory strike.
  See Catley v. State
, 763 S.W.2d 465, 466-67 (Tex. App.—Houston [14
th
 Dist.] 1988, pet. ref’d).  Although Rodriguez immediately advised the trial court that he did not observe Mr. Hernandez raise his hand in response to the State’s question, he did not attempt to recall Mr. Hernandez to determine whether or not he had actually raised his hand. Thereafter, the trial court accepted the State’s race-neutral reason for striking Mr. Hernandez and rejected Rodriguez’s claim that the reason was merely a pretext for purposeful discrimination. 
 Because the trial court’s decision turned largely on an evaluation of credibility
 and is supported by the record, the denial of Rodriguez’s 
Batson
 challenge as to Mr. Hernandez was not clearly erroneous. 
See Ladd v. State
, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000); 
Cantu v. State
,
 
842 S.W.2d 667, 689 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993).  Thus, our review of the record reveals that no reversible error occurred prior to trial.

B.  Guilt-Innocence Phase

Prior to opening arguments, the trial court held a hearing outside the jury’s presence to determine if C.B.’s outcry statement to Torrence was reliable. The Texas Code of Criminal Procedure provides for the admission of out-of-court statements by sexual assault victims under the age of twelve if the statement alleging the offense was made by a child against whom the offense was allegedly committed and was made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense.   
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2(a)(1) (Vernon Supp. 2004). 
 
The record in the instant case demonstrates that the State complied with the first required predicate for admission of the statement by providing sufficient notice to Rodriguez, including the identity of Torrence as the outcry witness and a summary of her statement.  
See id
. § 2(b)(1)(B), (C). 
Moreover, the record reflects that Torrence was the first person to whom C.B. spoke concerning the sexual misconduct at issue in the case and that C.B. was available to testify at trial if he was called as a witness.  
See id
. § 2
(a), (b)(3).  Further, C.B.’s statement to Torrence was specific and factually related to the offense for which Rodriguez was charged.  
See Garcia v. State
, 792 S.W.2d 88, 90-91 (Tex. Crim. App. 1990) (recognizing that statement must provide more than general allusion of abuse to satisfy requirements of the outcry witness statute). 

Based upon the content and circumstances of the statement, the trial court determined that Torrence was a proper outcry witness, thereby implying that it perceived C.B.’s statement to be reliable.
(footnote: 2)  
See Villalon v. State
, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990).
 
 Therefore, because the record reflects that the statutory requirements were satisfied, the trial court’s ruling permitting Torrence to testify as an outcry witness was not an abuse of discretion.  
See id.

During the course of the trial, Rodriguez objected to the introduction of the cassette tape containing Rodriguez’s oral statement to Officer Hart, complaining once again about the voluntariness of his statement.  Based on the preliminary determination of the admissibility of the statement, the trial court overruled his objection and admitted the evidence.  Our review of the record reveals that the trial court’s ruling on Rodriguez’s objection did not constitute an abuse of discretion.

The court’s charge on guilt-innocence included an instruction for the jury to disregard the confession if it entertained reasonable doubt as to whether Rodriguez’s confession was freely and voluntarily made.  Moreover, the charge on guilt-innocence properly defined the law and applied the law to the facts of the case, 
and 
Rodriguez did not object to the court’s charge.  Likewise, the State’s opening statement to the jury was proper and was made without objection from Rodriguez. 
 

During closing argument, Rodriguez did object to a portion of the State’s argument on the ground that the State was attempting to shift the burden of proof.  However, the trial court properly overruled the objection because the State’s reference to the subpoena power of the defense was made in response to an argument by Rodriguez.  Specifically, after Rodriguez challenged the State’s failure to provide testimony from certain sources, the State merely pointed out that Rodriguez failed to provide testimony from those sources as well. 
 See Harris v. State
, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, no pet.) (holding State’s comment about subpoena power of defendant proper if it refers to defendant's failure to produce evidence from other sources).

After reviewing the record and applying the appropriate standard of review,
(footnote: 3) we also conclude 
that the evidence is both legally and factually sufficient to support Rodriguez’s conviction for indecency with a child.  Based on the testimony and evidence presented at trial, the jury could have reasonably found the essential elements of the offense beyond a reasonable doubt.  
See
 
 Tex. Penal Code
 Ann
.
 art. 21.11.

Finally, Rodriguez’s counsel at trial effectively cross-examined the State’s witnesses and attempted to establish reasonable doubt regarding both the voluntariness of Rodriguez’s statement to Officer Hart and the proof of the charged offense.
  
Thus, counsel’s performance at the guilt-innocence phase of trial was constitutionally sufficient
.  
See Strickland v. Washington
, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Consequently, after reviewing the record, we have found no reversible error during the guilt-innocence phase of Rodriguez’s trial.

C.  Punishment

D
uring the punishment phase, Rodriguez raised several objections regarding the admissibility of his juvenile record.  After a finding of guilt, evidence that a defendant was adjudicated delinquent based on the commission of a felony or a jailable misdemeanor is admissible if the trial court deems it relevant to sentencing.  
Tex. Code Crim. Proc. Ann.
 art. 37.07, § (3)(a)(1) (Vernon Supp. 2004).  The record reveals that, prior to trial and in accordance with his request, Rodriguez received notice of the State’s intent to introduce evidence of Rodriguez’s prior adjudications.  
See id
. § 3(g) Moreover, the trial court’s charge on punishment instructed the jury that it should consider the evidence only if it was satisfied beyond a reasonable doubt that Rodriguez had committed the extraneous crimes.  
See id
. § (3)(a)(1), (b).  Thus, the trial court did not abuse its discretion by admitting evidence of Rodriguez’s juvenile adjudications.

Rodriguez also objected to the testimony of prosecution witness Ron Perrett, an expert on sex offenders.  During voir dire examination, Perrett stated that he would testify that Rodriguez was a danger to the community and was at high risk to reoffend sexually if not incarcerated.  Thereafter, Rodriguez challenged both Perrett’s qualifications as an expert and the scientific validity of Perrett’s testimony.  He also pointed out that Perrett had never interviewed or had any contact with Rodriguez.  

Under Texas Rule of Evidence 702, the trial court must find that the following three conditions are satisfied before admitting expert testimony: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the trier of fact in deciding the case. 
Tex. R. Evid.
 702; 
Alvarado v. State
, 912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995).  The trial court's determination regarding experts’ qualifications and the admissibility of expert testimony is subject to an abuse of discretion standard of review. 
Lagrone v. State
, 942 S.W.2d 602, 616 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997); 
Alvarado
, 912 S.W.2d at 216.

On voir dire, Perrett testified that he had worked with “several thousand” sex offenders since the beginning of his career in 1977 and had testified as a risk assessment expert numerous times.  According to Perrett, he held a Bachelor of Arts degree with a double major in sociology and psychology, a Master of Science degree in social work, and a license from the State to provide treatment to both juvenile and adult sex offenders and to train and supervise other treatment providers.  Perrett is a clinical member of the American Counseling Association and the Association for the Treatment of Sex Offenders and maintains his knowledge in the field of sex offenders, social work, and counseling by attending over forty hours of continuing education per year. Perrett testified that risk assessment was an established area of expertise as related to sex offenders and indicated that the field was well-documented by research and literature.  Perrett maintained that his opinion concerning Rodriguez’s risk of reoffending was based on years of specialized experience, education, and training, coupled with knowledge derived from studying the works of researchers in the field of risk assessment.

In the instant case, Perrett was not required to personally interview or to have contact with Rodriguez prior to trial in order to render an opinion as to whether he was likely to reoffend if not incarcerated.  
See 
Tex. R. Evid.
 703 (recognizing that “facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing”).  Based on Perrett’s extensive background, experience, and expertise in the area of sex offenders, the trial court could have reasonably concluded that Perrett was qualified to testify as an expert on the issue of whether a convicted sex offender poses a continuing threat to society.  
See Hardin v. State
, 20 S.W.3d 84, 92 (Tex. App.—Texarkana 2000, pet. ref’d) (holding expert’s twenty years’ experience investigating and supervising sex offenders and her extensive and continuous training qualified her to testify as an expert on the issue of whether a convicted sex offender posed a continuing threat to society).  Moreover, due to Perrett’s superior knowledge concerning sex offenders, providing an assessment of a sex offender’s risk of reoffending was within his expertise.  
Perrett’s testimony also demonstrated the proper reliance on accepted principles in his field.  Thus, the trial court did not abuse its discretion by allowing Perrett’s testimony. 
 
See Hernandez v. State
, 53 S.W.3d 742, 751 (Tex. App.—Houston [1
st
 Dist.] 2001, pet. ref’d) (recognizing that experience alone may demonstrate that expert’s testimony is reliable); 
Hardin
, 20 S.W.3d at 92 (same).

None of the trial court’s other rulings on Rodriguez’s objections during punishment constitute reversible error or an abuse of discretion.  In addition, while Rodriguez objected to paragraph ten of the charge on punishment, the trial court’s decision to overrule his objection was not erroneous.  
The court’s charge on punishment properly instructed the jury on the applicable range of punishment. 
 See
 
Tex. Penal Code Ann.
 § 12.33 (Vernon 2003).  The State’s opening statement and closing argument 
during punishment were also proper. Further, 
counsel’s performance satisfied the standard announced in
 Hernandez v. State
, 988 S.W.2d 770 (Tex. Crim. App. 1999). 
 
Finally, Rodriguez’s twelve-year sentence is within the statutory range for a second-degree felony. 
 
See 
Tex. Penal Code Ann.
 
§ 12.33
.  Thus, our review of the record reveals no reversible error from the punishment phase.

V.  Conclusion

Based on our independent review of the record in this case, we have determined that there is no error on which an appeal could be based or which would require reversal.  Therefore
, because we agree with counsel’s professional determination that an appeal in the instant case is frivolous, we grant counsel’s motion to withdraw and affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: April 15, 2004

FOOTNOTES
1:
Batson v. Kentucky
, 476 U.S. 79, 106 S. Ct. 1712 (1986).  Under 
Batson
, a three-step process is used to determine whether the State exercised its peremptory strikes in a discriminatory manner:  (1) the opponent of a peremptory challenge must make out a prima facie case of racial discrimination; (2) the burden then shifts to the proponent of the strike to come forward with a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.  
Id
.
 
at
 93-98, 106 S. Ct at 1721-24; 
see also 
Tex. Code Crim. Proc. Ann.
 art. 35.261(a) (Vernon 1989) (prohibiting peremptory strikes based on race). 

2:
The trial court specifically limited Torrence’s testimony to the child’s statement as summarized in “The State’s Original Notice of Intent to Offer Hearsay Statements of Child Sexual Abuse Victim.”

3:
See, e.g., West v. State
, 121 S.W.3d 95, 110-11 (Tex. App.—Fort Worth 2003, no pet.); 
Garcia v. State
, 112 S.W.3d 839, 851-52 (Tex. App.—Houston [14
th
 Dist.] 2003, no pet.).